UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| M'LEAH HASSAN | CIVIL ACTION NO. 15-2820 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| CITY OF SHREVEPORT | MAGISTRATE JUDGE HAYES |

# MEMORANDUM RULING

Before the Court are two motions for summary judgment: Plaintiff's motion regarding several of her claims against the City of Shreveport, [Record Document 53], and a broader motion by the City of Shreveport ("the City") and Willie Shaw ("Shaw"), the former chief of the Shreveport Police Department ("the Department"), on all of Plaintiff's claims against them, [Record Document 54]. The City and Shaw have filed opposition and reply briefs, and Plaintiff has filed an opposition brief, all of which have been considered by the undersigned. [Record Documents 56–58].

M'Leah Hassan ("Hassan") was allegedly raped at the Shreveport police station by James Greene ("Greene"), then an officer with the Department. In addition to federal and state law claims against Greene in his individual and official capacities, Hassan brings the following claims against the City and Shaw: (1) 42 U.S.C. § 1983 claims against the City and against Shaw in his individual and official capacities for failure to train Greene appropriately and for maintaining a policy, custom, or practice that allowed the alleged rape to occur; (2) a state law claim against the City for negligent hiring, training, and supervision of Greene; and (3) state law claims for assault, battery, and false imprisonment against the City as Greene's employer.

1

For the reasons discussed below, Hassan's Motion for Summary Judgment is **DENIED**. The City and Shaw's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** on Hassan's claims for punitive damages against the City and for punitive damages against Shaw in his official capacity. The motion is **DENIED** on all of Hassan's remaining claims against the City and against Shaw in his official capacity and on all of Hassan's claims against Shaw in his individual capacity.

**I. Background**

On February 10, 2015, Hassan went to the Department to file a report against a former boyfriend who had threatened her life. [Record Document 53-1 at 1]. Greene took her report inside his office. [*Id.*]. While she was there, he touched her breast under the guise of looking at a tattoo that she had; she swatted his hand away and left. [Record Documents 53 at 4 and 53-4 at 4]. The following day, Greene telephoned Hassan and asked her to return to the police station. [Record Document 53-1 at 2]. When she did so, Greene again interviewed her in his office where the two had sexual intercourse; Greene contends that the sex was consensual, while Hassan alleges that it was rape. [*Id.*].

After Hassan reported the incident, an investigation was opened that led to Greene's termination. [Record Document 54-2 at 2]. The state charged Greene with abuse of office under La. R.S. 14:134.3; he was acquitted following a trial. [Record Document 40 at 2]. An important witness at the trial was Officer Stephen Gipson ("Gipson"), who at the time of the alleged rape was romantically involved with Hassan. [Record Document 54-4 at 3–5]. Hassan told Gipson that Greene had raped her, though he testified that he was uncertain whether or not he believed her. [Record Document 57-4 at 5]. Believing that Gipson had perjured himself on the stand to protect Greene and

the Department, Hassan moved to amend her complaint to name Gipson as an additional defendant and to add two counts of conspiracy. [Record Document 37]. The Court denied Hassan's motion as both untimely and futile. [Record Document 40].

## II. Analysis

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23. However, "if the movant bears the burden of proof on an issue, . . . he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and designating specific facts for support. *Little v. Liquid Air Corp.*, 37 F.3d

---

[1] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

3

1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in the nonmovant's favor. *Little*, 37 F.3d at 1075 (citing *Armstrong v. City of Dall.*, 997 F.2d 62 (5th Cir. 1993)).

### B. Section 1983 Claims Against the City and Shaw

Hassan raises two § 1983 claims against the City and Shaw. First, she alleges a failure to train Greene in the proper procedures for taking a complainant's report, in a person's right to be free from unlawful seizures, and in Greene's "duties as a police officer [to] refrain from bringing a complainant in a criminal case to his office so he can satisfy his sexual desires." [Record Document 1 at 9].[2] Second, she alleges a policy, custom, or practice of providing inadequate training and employing, retaining, and failing to discipline an officer that the City "knew or reasonably should have known had dangerous propensities for abusing authority and for using his position . . . to make inappropriate sexual advances toward women." [*Id.* at 14].

---

[2] Although Hassan's complaint includes a second claim entitled "Failure to Train," this claim is identical to the first failure-to-train claim. [Record Document 1 at 8–9, 22–23]

4

### 1. Adverse Inference from Gipson's Refusal to Answer Questions at His Deposition

As discussed below, in order to prevail on her § 1983 claim that the City failed to adequately supervise and discipline Greene, Hassan must establish that the City and Shaw had reason to know that Greene was likely to engage in sexual misconduct. Shaw has submitted an affidavit stating that during his six-year term as police chief he was unaware of Greene or anyone "having sexual activity in their [sic] office at the Shreveport Police Department while on or off duty." [Record Document 57-2 at 1]. In response, Hassan points out that when asked whether he ever told anyone that Greene "had a reputation for getting fresh with women at the police department," Gipson asserted his Fifth Amendment privilege against self-incrimination. [Record Documents 53 at 7–8 and 53-1 at 8–9].[3] Hassan argues that this assertion is "affirmative evidence, not only of a cover-up and concealment of wrongdoing, but the deliberate promotion of a false counter-narrative intended to exonerate . . . the City of Shreveport of civil liability." [Record Document 56-1 at 5].[4]

The Fifth Amendment does not prohibit a factfinder from drawing adverse inferences in a civil trial from a non-party witness's invocation of the Fifth Amendment. *FDIC v. Fid. & Deposit*

---

[3] Gipson was deposed on July 14, 2016; the second half of the deposition was continued by agreement of the parties. [Record Document 18 at 1]. After Gipson failed to appear at the scheduled time to resume his deposition, Hassan moved for sanctions. [*Id.* at 2–3]. Despite being personally served, Gipson failed to appear at the show cause hearing scheduled before the Magistrate Judge. [Record Document 22]. At a subsequent hearing where Gipson appeared, the Court strongly admonished him for failing to appear at the deposition and the show cause hearing and imposed sanctions. [Record Document 32]. Gipson completed his deposition two days later, where he frequently invoked his Fifth Amendment privilege. [Record Document 53-5].

[4] To the extent that Hassan's filings are directed toward supporting her conspiracy claim by establishing that Gipson perjured himself at Greene's criminal trial, the Court has rejected an amendment to the complaint that would state a conspiracy claim, [Record Document 40]; therefore, the Court will not consider this line of argument. However, to the extent that Hassan's filings are directed towards showing a culture of indifference to inappropriate sexual conduct in the Department, the Court will consider this line of argument.

*Co. of Md.*, 45 F.3d 969, 977 (5th Cir. 1995) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 275 (3d Cir. 1986)). In this case, it is not clear why Gipson invoked the Fifth Amendment with regard to this question. The question does not involve any action by Gibson–other than making the statement–but by Greene. However, the adverse inference that could be drawn from Gipson's invocation of his right against self-incrimination is that Greene had a reputation in the Department for inappropriate conduct toward women while on duty. Because at the summary judgment stage all inferences must be made in favor of the non-movant, *Anderson*, 477 U.S. at 255, for purposes of evaluating the City and Shaw's motion, it must be taken as proven that Greene had a reputation in the Department for inappropriate sexual behavior.

## 2. Section 1983 Claims Against the City

Both parties seek summary judgment on Hassan's § 1983 claims against the City. [Record Documents 53 at 7 and 54-1 at 7]. Hassan raises two interconnected claims: a failure to adequately train Greene and a policy or practice of inadequately supervising and disciplining an officer that the City knew or should have known had a reputation for inappropriate sexual conduct in the workplace. [Record Document 56-1 at 4–5].

Section 1983 is applicable when a state actor deprives a person of her constitutional rights. 42 U.S.C. § 1983 (2012). The Fifth Circuit has clearly held that sexual abuse infringes upon a substantive due process right to bodily integrity. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451–52 (5th Cir. 1994) (en banc). Rape violates bodily integrity, and so rape by an on-duty police officer is actionable under § 1983. *See Rogers v. City of Little Rock*, 152 F.3d 790, 796 (8th Cir. 1998); *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997). Therefore, Greene's alleged rape of

Hassan implicates a constitutional concern and authorizes the instant § 1983 action against the City.[5] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (holding that municipalities are "persons" for purposes of liability under § 1983).

### a. Failure to Train Claim Against the City

The City relies upon Shaw's affidavit, which states that Shreveport police officers are trained to conduct themselves appropriately with members of the public. [Record Documents 54-1 at 8 and 54-4 at 2]. Hassan makes no clear response this claim, but appears to suggest that the fact that Greene allegedly raped her indicates that he was improperly trained. [Record Document 56-1 at 4–5]. Otherwise, Hassan points to no record evidence regarding the training that the Department provided to its officers.

To establish liability for a failure to train, Hassan must show (1) that the City failed to adequately train Greene not to sexually assault women who come to the police station to report crimes; (2) that the failure to train was causally connected to the alleged rape; and (3) that the failure to train manifested deliberate indifference to Hassan's right to bodily integrity. *See Taylor Indep. Sch. Dist.*, 15 F.3d at 452 (citing *Hinshaw v. Doffer*, 785 F.2d 1260, 1262 (5th Cir. 1986)). Once the Court accepts the adverse inference of Greene's reputation for inappropriate sexual conduct, the Court must hold the City to a burden of showing that it took specific action to train Greene that such conduct was not acceptable. Greene has testified that the Department provided sexual harassment training. [Record Document 54-3 at 4]. While this training did not specifically include instruction not to commit sexual assault, [*id.*], "[e]veryone, let alone police officers, should know not to rape,"

---

[5] To impose liability under § 1983, the unconstitutional action must have been made under the color of state law. 42 U.S.C. § 1983. Neither party disputes that the actions of the City and Shaw in training and supervising Greene were actions under the color of state law.

7

*Smith v. Carruth*, No. CV 15-4570, 2017 WL 785345, at *6 (E.D. La. Mar. 1, 2017). Notably, Chief Shaw does not state in either affidavit that Greene specifically received any sexual harassment training. Instead, he vaguely asserts: "Detective Greene was trained and supervised appropriately." [Record Document 57-2 at 2]. Because a culture that tolerates inappropriate sexual conduct certainly suggests a failure to train, there are fact questions as to whether the City properly trained Greene.

The next issue is whether the City was deliberately indifferent. Here, the Court finds questions of fact sufficient to defeat summary judgment. To establish deliberate indifference, a § 1983 plaintiff can either show (1) that the need for training was obvious and that the failure to train was likely to result in the constitutional violations complained of or (2) that there was a failure to act in response to repeated complaints of constitutional violations. *See City of Canton v. Harris*, 489 U.S. 378, 390 & n.10 (1989). Again, once this Court accepts the adverse inference that Greene had a reputation in the Department for inappropriate sexual conduct, Hassan has satisfied her burden for purposes of summary judgment. That is, there exists a genuine dispute of material fact as to the City's deliberate indifference. The Court admits that this inference alone may not carry the day for Hassan at a trial of this matter, but such an assessment of the weight of her evidence is not appropriate at this juncture. Likewise, these disputed facts prevent summary judgment in favor of Hassan. Therefore, Hassan's motion for summary judgment on the failure-to-train claim is denied, and the City's motion for summary judgment on the failure-to-train claim is also denied.[6]

---

[6] Although her complaint is not perfectly clear, Hassan appears to allege that the City is liable for violating her Fourth and Fourteenth Amendment rights to be free from unreasonable seizure. [Record Document 1 at 11–12]. The seizure in question is the alleged rape. The City and Shaw are not vicariously liable under § 1983 for any constitutional violations committed by Greene. *See Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002).

#### b. Policy or Practice Claim Against the City

Hassan has alleged that the City has policies of failing to adequately supervise police officers and of failing to address the actions of officers with known histories of inappropriate sexual behavior. [Record Documents 1 at 13–14 and 53 at 9–10]. The City argues that Hassan cannot demonstrate the existence of a relevant policy, whether implicit or explicit, that allowed the rape to occur nor can she show that any policy was the moving force behind Greene's alleged rape of Hassan. [Record Document 54-1 at 3–4].

Because § 1983 does not impose liability on a municipality under a theory of respondeat superior, *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002), a successful plaintiff in a § 1983 action against a municipality must establish three elements: "(1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." *Davis v. Tarrant Cty.*, 565 F.3d 214, 227 (5th Cir. 2009) (citing *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)). As to the first element, the City is clearly the policymaker for its departments, and thus for its employees. Any other conclusion is not rebutted in the City's briefs and evidence.

Next, Hassan must produce evidence of a municipal policy or custom. A policy or custom may be established (1) by a failure to act that rises to the level of deliberate indifference, (2) by the creation of a generally applicable policy, or (3) by a specific action that is itself a constitutional violation. *Burge v. Par. of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999). Hassan proposes that the Department has policies of failing to properly train its officers not to commit sexual assault and of allowing a culture in which inappropriate sexual conduct is tolerated or ignored. She alleges that the Department has a "policy of inaction and an attitude of indifference" toward sexual misconduct

that includes "failing to discipline, retrain, investigate, and terminate officers who participate in such behavior." [Record Document 1 at 14]. She also suggests that the Department has an unwritten policy of "employing and retaining as police officers individuals . . . who the [City] knew or reasonably should have known had dangerous propensities for abusing authority and for using his [sic] position as a detective to make inappropriate sexual advances toward women." [*Id.*]. An unwritten policy is an official policy when it constitutes "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Hous.*, 735 F.2d 838, 842 (5th Cir.), *on reh'g on other grounds*, 739 F.2d 993 (5th Cir. 1984). Again, all that Hassan has to support her conclusion regarding these unwritten policies is the factual inference as to Greene's reputation in the Department.

The City, on the other hand, puts forth affirmative evidence that these allegations are not correct. Chief Shaw states explicitly:

> It is not the policy, practice or custom of the Shreveport Police Department to allow or condone actions of an officer involving sexual relations with a member of the public, or anyone else, while on duty either at the Shreveport Police Department or anywhere else.

[Record Document 54-4 at 2]. Shaw's other affidavit states that he was unaware of Greene or any other officer ever having had sex in an office at the Department. [Record Document 57-2 at 1].

Hassan has the burden of presenting evidence that casts doubt on this assertion. Drawing an adverse inference from Gipson's invocation of his Fifth Amendment privilege, the Court infers Greene had a reputation in the Department for inappropriate sexual behavior. Drawing the most favorable inference from this fact, the Court further infers that Shaw either was aware of this

10

reputation or should have been aware of it. Similarly, Gipson invoked his Fifth Amendment privilege when asked whether he was aware of cover-ups or criminal activity at the Department. [Record Document 53-5 at 7–8]. Drawing the inferences in the light most favorable to Hassan, the Court infers that officers in the Department sometimes violate the law and that the Department sometimes acts to conceal those violations. Therefore, Hassan has met her summary judgment burden of creating an issue of fact as to whether the Department operates under an unwritten policy of tolerating inappropriate sexual conduct and retaining officers with propensities for abuse of authority.

To establish that a policy is a moving force behind a constitutional violation, a plaintiff must show both causation and culpability. *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015). First, Hassan must show a "direct causal connection" between the policy and the violation of her rights that exceeds the "but for" causation standard. *See id.* (quoting *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992)). Second, she must prove culpability by showing deliberate indifference to the "known or obvious consequences" of the policy. *See id.* (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001)).

Clearly, retaining officers who have committed inappropriate conduct and then concealing that conduct are facts tending to establish that a municipal policy was the "moving force" behind the alleged rape. Because questions of fact remain unresolved, Hassan's motion for summary judgment on the policy or practice claim is denied, and the City's motion for summary judgment on this claim is likewise denied.

### 3. Official Capacity Claims Against Shaw

Because official capacity suits against municipal officers must be treated as suits against the municipality, *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000)

(citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)), the official capacity claims against Shaw are subject to an analysis identical to that used for the § 1983 claims against the City. Therefore, for the reasons discussed above with regard to those claims, Shaw's motion for summary judgment is denied on all claims against Shaw in his official capacity.

### 4. Individual Capacity Claims Against Shaw

Shaw argues that he is entitled to qualified immunity on Hassan's claims against him in his individual capacity. [Record Document 54-1 at 7–9]. In response, Hassan argues that Shaw is not entitled to qualified immunity because he could not have acted reasonably in light of his knowledge of Greene's reputation for sexual misconduct. [Record Document 56-1 at 5–6]. Shaw has replied that without any evidence of sexual conduct by Greene in his office at the Department, Shaw would have had no reason to address Greene's behavior. [Record Document 58 at 2].

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). To be entitled to qualified immunity, an official who has violated a clearly established constitutional or statutory right must have done so through "conduct that was objectively reasonable under the law at the time of the incident." *Michalik v. Herman*, 422 F.3d 252, 257–258 (5th Cir. 2005) (citing *Siegert v. Gilley*, 500 U.S. 226 (1991); *Sanchez v. Swyden*, 139 F.3d 464, 467 (5th Cir. 1998)). A clearly established right is one whose outline is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir. 2000). A court may evaluate the reasonableness of the

official's conduct and the existence of a statutory or constitutional violation in either order. *Pearson*, 555 U.S. at 236.

An individual capacity failure-to-train claim replicates the analysis used for municipal liability under the same theory. *Lewis v. Pugh*, 289 F. App'x 767, 771–72 (5th Cir. 2008) (citing *Taylor Indep. Sch. Dist.*, 15 F.3d at 453). Therefore, for the reasons enunciated above, the question of Shaw's liability in his individual capacity for a failure to adequately train Greene survives summary judgment. As a result, to be entitled to qualified immunity on the failure-to-train claim, Shaw must have acted reasonably when he did not specifically train Greene regarding appropriate sexual conduct. Shaw's affidavits state that he did not know that Greene had ever had sex in his office, but the inference that can be drawn from Gipson's invocation of the Fifth Amendment is that Shaw was aware of Greene's reputation for inappropriate sexual behavior. Shaw's failure to provide additional training to Greene could have been reasonable only if Shaw did not know of any reason to provide that training. Because there is a dispute of material fact over Shaw's degree of knowledge, it cannot be said at this stage that Shaw's conduct was reasonable. Hence, Shaw is not entitled to qualified immunity as to Hassan's failure-to-train claim.

Although not alleged explicitly, Hassan also appears to argue that Shaw is liable in his individual capacity because he did not discipline or remove Greene after becoming aware of Greene's reputation. A police chief is liable for his officers' conduct if "he knew or should have known that the allegedly unconstitutional acts were occurring and acquiesced in them." *Wanger v. Bonner*, 621 F.2d 675, 680 (5th Cir. 1980). Taking the evidence in the light most favorable to Hassan, the Court infers that Shaw knew that Greene had a reputation for "getting fresh with women." Because sexual harassment and sexual violence exist on a continuum, Shaw's knowledge of Greene's reputation is

sufficient to establish a question of fact regarding his awareness of any allegedly unconstitutional conduct on Greene's part. In light of the inference that must be made regarding Shaw's knowledge, it cannot have been reasonable for Shaw to fail to intervene and discipline Greene. As a result, Shaw is not entitled to qualified immunity on this claim. His motion for summary judgment on the issue of his liability in his individual capacity is thus denied.

### C. State Law Negligent Supervision Claim Against the City

Hassan alleges that the City committed a tort under Louisiana law by failing to adequately train and supervise Greene. [Record Document 1 at 19–21]. In her motion for summary judgment, Hassan argues that the Department knew of Greene's propensity toward inappropriate sexual behavior and negligently supervised him by failing to address it. [Record Document 53 at 12]. The City argues that Shaw adequately supervised Greene, providing in support Shaw's affidavits that Greene was properly trained and that Shaw was unaware of any sexual activity taking place inside offices at the Department. [Record Documents 54-4 at 2–3, 57 at 6–7, and 57-2 at 1–2]. In addition, the City has raised a qualified immunity defense. [Record Document 7 at 14].

Under Louisiana law, an employer has "a duty [to] protect [its patrons] from the tortious act of its employee on its premises during its hours of operation." *Bourgeois v. Allstate Ins. Co.*, 02-105 (La. App. 5 Cir. 5/29/02); 820 So. 2d 1132, 1135–36. Therefore, if a failure to supervise Greene caused him to rape Hassan, then the City is directly liable in tort unless qualified immunity applies.[7]

---

[7] While the City and Shaw have not explicitly argued in their summary judgment motion that the City is entitled to qualified immunity on the state law claim, they have alleged qualified immunity and have argued for qualified immunity for claims against Shaw in his individual capacity. [Record Document 54-1 at 7–9]. Therefore, the Court will consider whether the City has qualified immunity. *See Smith*, 2017 WL 785345, at *11 n. 66 (citing La. Stat. Ann. § 9:2798.1(A) (2009)) (granting summary judgment for a municipality based on qualified immunity under Louisiana law even though the defendant did "not explicitly argue that the immunity applie[d]" because "the plain

14

The availability of qualified immunity for a state law claim is determined by state law. *Brown v. Miller*, 519 F.3d 231, 239 (5th Cir. 2008) (citing *Sorey v. Kellett*, 849 F.2d 960, 961–63 (5th Cir. 1988)). Under Louisiana law, municipalities are entitled to qualified immunity "based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. Stat. Ann. § 9:2798.1(B) (2009). However, this immunity does not apply if a municipality's conduct is "not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists" or if the conduct "constitute[s] criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." *Id.* § 9:2798.1(C). Applying this statute, courts have regularly held that the hiring, retention, and supervision policies of law enforcement units are discretionary such that qualified immunity applies. *See, e.g., Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005) ("[The Police Chief's] training and supervisory decisions are grounded in policy considerations . . . ."); *Curran v. Aleshire*, 67 F. Supp. 3d 741, 763–64 (E.D. La. 2014) ("Sheriff Strain's decisions to hire, train, supervise and retain officers are part of his discretionary power within the course and scope of his lawful powers and duties as sheriff."); *Smith v. Lafayette Par. Sheriff's Dep't*, 2003-517, p. 7 (La. App. 3 Cir. 4/21/04); 874 So. 2d 863, 868 ("Sheriff Breaux's hiring/retention policy was a discretionary act, and liability cannot be imposed on LPSD for its application of the policy.").

Although, under Louisiana law, the Department's personnel management decisions are discretionary, in this case there is a fact question as to whether those decisions as regards Greene "constitute[d] criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant

---

language of the statute" indicated that it protected municipalities as well as individual officers).

misconduct." La. Stat. Ann. § 9:2798.1(C). As a result, summary judgment is denied to the City as to the negligent supervision claim, and Hassan's motion for summary judgment on this claim is likewise denied.

### D. Intentional Tort Claims Against the City

The City seeks summary judgment on Hassan's claim that it is vicariously liable for Greene's alleged assault, battery, and false imprisonment of Hassan. [Record Document 54-1 at 7]. In support, the City argues that municipal liability under *Monell* cannot be based on a theory of respondeat superior, and so these state law claims fail as a matter of law. [*Id.*]. Hassan does not explicitly address the City's contention that *Monell* shields the City from liability on her intentional tort claims. [Record Document 56-1 at 5–6].

Sexual crimes perpetrated by on-duty law enforcement officers subject the employing agency to vicarious liability in tort. *See Latullas v. State*, 94-2049, p. 8 (La. App. 1 Cir. 6/23/95); 658 So. 2d 800, 804–05 ("Even though the rape itself was totally unauthorized by Lt. Brown's employer, and motivated by Lt. Brown's personal desires, the rape nevertheless occurred while he was at least partly actuated by his purpose of acting for his employer in the control and supervision of inmates, and it was through these duties that this opportunity arose."); *Applewhite v. City of Baton Rouge*, 380 So. 2d 119, 120–22 (La. Ct. App. 1979) (holding city vicariously liable for rape committed in a police cruiser by an officer who had taken the victim into custody). Hence, if Greene did rape Hassan, then the City is vicariously liable for Greene's tortious conduct.

The City is not immune from this vicarious liability. Hassan's state law claims are not brought through the vehicle of § 1983; rather they are independent causes of action. *See, e.g., Dibrell v. Huber*, 226 F. App'x 332, 333 (5th Cir. 2007) (holding that a claim "based on rights afforded . . . by

state law, not federal law, mak[es] a § 1983 claim improper"). Hence, the City's reliance on *Monell*'s prohibition on vicarious liability to defeat its liability as Greene's employer on these state law claims is unavailing. In addition, the discretionary immunity afforded municipalities under La. R.S. 9:2738.1 does not apply to a muncipality's vicarious liability for its employee's torts. *Smith*, 2017 WL 785345, at *11; *Hoffpauir v. Columbia Cas. Co.*, No. CIV.A. 12-403-JJB, 2013 WL 5934699, at *13 (M.D. La. Nov. 5, 2013). Hence, the City is not immune from its vicarious liability for Greene's allegedly tortious conduct. Because there is a dispute of material fact over whether the sexual encounter between Greene and Hassan was consensual, [Record Document 53-1 at 6], summary judgment on the assault, battery, and false imprisonment claims is inappropriate. Therefore, the Court denies the City's motion for summary judgment on these claims.

### E. **Punitive Damages**

In her complaint, Hassan seeks punitive damages. [Record Document 1 at 15–16, 18, 23]. The City has argued that municipalities are immune from punitive damages under § 1983 and that punitive damages are unavailable in Louisiana tort actions in these circumstances. [Record Document 54-1 at 13]. Municipalities are immune from punitive damages under § 1983, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), while Louisiana authorizes recovery of punitive damages in tort only under certain particular conditions, none of which are applicable here, *see* La. Civ. Code Ann. arts. 2315.3–.4, .7–.8 (2010 & Supp. 2017). Therefore, punitive damages are unavailable against the City and against Shaw in his official capacity. Punitive damages are available against an officer in his individual capacity when the "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Because questions of fact exist regarding Shaw's knowledge

of Greene's prior conduct and thus whether Shaw acted with callous indifference, the Court finds that Hassan has carried her burden at summary judgment. The Court thus grants summary judgment for the City and for Shaw in his official capacity on the question of punitive damages, but denies summary judgment to Shaw in his individual capacity on this issue.

### III. Conclusion

Therefore, in light of the foregoing, the Court **DENIES** Hassan's Motion for Summary Judgment. [Record Document 53]. The Court **GRANTS IN PART and DENIES IN PART** the City and Shaw's Motion for Summary Judgment. [Record Document 54]. The Court **GRANTS** summary judgment for the City and for Shaw in his official capacity on Hassan's claim for punitive damages. The Court **DENIES** summary judgment on all remaining claims against the City and against Shaw in his official capacity and on all claims against Shaw in his individual capacity. All state and federal claims against Greene remain pending.

**IT IS ORDERED** that the punitive damages claims against the City and against Shaw in his official capacity are hereby **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this ____ day of November, 2017.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE