# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

M'LEAH HASSAN

VERSUS

CITY OF SHREVEPORT

CIVIL ACTION NO. 15-2820

JUDGE ELIZABETH ERNY FOOTE

MAGISTRATE JUDGE HAYES

## <u>MEMORANDUM RULING</u>

Before the Court is Plaintiff's Omnibus Motion in Limine. [Record Document 63]. At the Court's request, the parties have also briefed the burden of proof on Plaintiff's consent to sexual contact with Defendant James Greene ("Greene"), the right of Stephen Gipson ("Gipson") to assert the Fifth Amendment privilege, the admissibility and relevance of Greene's state-court acquittal, and the admissibility of Plaintiff's Exhibits 26, 30, and 31. [Record Documents 75, 85, 86, 87, 88, 89, 90, and 91].

For the reasons that follow, Plaintiff's Motion in Limine [Record Document 63] is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** as to Gipson's and Greene's awards and commendations, but **DENIED** as to their performance reviews, subject to any other evidentiary objections.

The Court **HOLDS** that on Plaintiff's battery, assault, false imprisonment, intentional infliction of emotional distress, and Fourteenth Amendment claims, Plaintiff bears the burden to prove that she did not consent to sexual contact with Greene. On Plaintiff's Fourth Amendment claims, Defendants must prove that she consented to sexual relations with Greene. On her 42 U.S.C. § 1983 claims against the City of Shreveport (the "City") and Willie Shaw, Jr.

1

("Shaw") (collectively, the "City Defendants"), Plaintiff bears the burden of proof on the issue of her consent on claims whose constitutional basis lies in her Fourteenth Amendment right to bodily integrity, while Defendants must prove her consent on her claims arising from her Fourth Amendment right to be free from unreasonable seizure.

The Court **HOLDS** that Gipson may invoke his Fifth Amendment privilege, but that he must do so on a question-by-question basis. The Court will allow the jury to draw an adverse inference against Defendants from Gipson's invocation of the privilege, but will also provide, upon request, a limiting instruction that the inference cannot be made when the fact to be inferred is otherwise inadmissible.

The Court **HOLDS** that Greene's acquittal in state court for Abuse of Office is admissible because no party has objected.

The Court **HOLDS** that the investigator's statements in Plaintiff's Exhibit 26 are admissible, but that any other person's statements within the exhibit are admissible only if they are nonhearsay or fall within a hearsay exception.

The Court **HOLDS** that Plaintiff's and Gipson's statements within Exhibits 30 and 31 are admissible for impeachment purposes and that Plaintiff's statements within Exhibits 30 and 31 are admissible to rebut an implied charge of fabrication. After an evidentiary hearing, the Court will consider the admissibility of Gipson's statements as statements made during and in furtherance of a conspiracy with Defendants.

## I.     **Background**

Plaintiff M'Leah Hassan ("Hassan") was allegedly raped at the Shreveport Police Department (the "Department") by Greene, then an officer with the Department. [Record Document 1 at 2, 6–7]. She reported the incident to Gipson, who is also an officer with the Department, and with whom she was romantically involved at the time. [Record Documents 53-4 at 3–4 and 57-4 at 5–6]. After Hassan filed a criminal complaint, Greene was acquitted of Abuse of Office following a trial at which Gipson testified.

Hassan then filed the instant suit, naming as Defendants Greene, the City, and Shaw, then the Shreveport police chief. [Record Document 1]. Against the City Defendants, Hassan asserted 42 U.S.C. § 1983 claims for failure to train, inappropriate retention of Greene as an officer, and inadequate supervision of Greene. [*Id.* at 8–9, 13–15]. Against Greene and the City, Hassan brought tort claims for false imprisonment, battery, and assault. [*Id.* at 9–11, 15–18]. Against Greene, she raised § 1983 claims for violations of the Fourth Amendment prohibition on unreasonable seizure and the Fourteenth Amendment right to bodily integrity. [*Id.* at 9–12]. Hassan also asserted an intentional infliction of emotional distress claim against Greene and a negligent supervision claim against the City. [*Id.* at 18–22]. In response, Defendants denied liability, and Shaw claimed qualified immunity. [Record Documents 7 and 9].

Discovery began, and the first portion of Gipson's deposition was completed. [Record Document 25 at 1]. Gipson then refused to participate in the remainder of his deposition and failed to appear before the Magistrate Judge to explain his refusal. [*Id.* at 2]. At a show-cause hearing at which Gipson finally appeared, this Court ordered a $6,000 sanction, which was to

be lifted with the exception of a $500 fine if he appeared and testified truthfully at his deposition. [Record Documents 27 and 32]. When the deposition resumed, Gipson invoked his Fifth Amendment privilege in response to many questions. [Record Document 53-5]. Continuing his pattern of resistance to this Court's authority, Gipson paid the fine only after the Court issued yet another show-cause order. [Record Documents 48 and 52].

Believing that Gipson testified untruthfully at Greene's criminal trial, Hassan sought leave to amend her complaint to name Gipson as a defendant. [Record Document 37]. The Court denied leave, and this matter proceeded to summary judgment. [Record Documents 40, 53, and 54]. The Court dismissed Hassan's punitive damages claims against the City and Shaw in his official capacity, but denied the parties' summary judgment motions on all other claims. [Record Document 62]. Shaw then took an interlocutory appeal on the issue of qualified immunity. [Record Document 69].

Before granting Shaw's motion to stay the case pending the outcome of the appeal, [Record Documents 73 and 79], the Court had received evidentiary motions and ordered briefing on particular legal issues, [Record Documents 63, 70, and 75]. It is to these matters the Court now turns.

## II.   Law and Analysis

### A.   Burden of Proof on Hassan's Consent to Sexual Contact with Greene

The parties dispute whether Hassan consented to sexual relations with Greene. [Record Document 53-1 at 2]. The Court asked the parties to brief the question of which party will bear the burden of proof on this issue and noted that the burden may be allocated differently for

4

different claims. [Record Document 75 at 3–4]. Hassan argues that for her battery claim, she must prove that she did not consent, but that consent is irrelevant to her remaining claims. [Record Document 91 at 4–7]. The City Defendants argue that Hassan has the burden to show the absence of consent as to all of her claims. [Record Document 90 at 1–2]. Greene argues that lack of consent is an element of battery and assault, but does not address Hassan's other claims. [Record Document 86 at 1–2].

Hassan has pleaded four intentional tort claims to which state law applies. *See, e.g.*, *Waganfeald v. Gusman*, 674 F.3d 475, 480 (5th Cir. 2012). The Louisiana Supreme Court has instructed: "[i]n a suit for damages resulting from an intentional tort, the claimant must carry the burden of proving all prima facie elements of the tort, including lack of consent to the invasive conduct." *Landry v. Bellanger*, 2002-1443, p. 16 (La. 5/20/03); 851 So. 2d 943, 954. The Court therefore holds that on her intentional tort claims for battery, assault, false imprisonment, and intentional infliction of emotional distress Hassan bears the burden to prove that she did not consent to sexual relations.

Hassan also raises two constitutional claims: unreasonable seizure under the Fourth Amendment and an invasion of her Fourteenth Amendment right to bodily integrity. In criminal law, the state must prove free and voluntary consent to a search or seizure. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). Because Hassan claims that Greene in his role as a police officer violated her Fourth Amendment right to be free from unreasonable seizure, the Court holds that as to this claim Defendants must prove that Hassan consented to sexual contact with Greene.

For an executive official's conduct to violate a substantive due process right to bodily integrity, the conduct must "shock[] the conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Nonconsensual or coerced sexual contact easily satisfies this standard. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451–52 (5th Cir. 1993) (en banc) (holding that students have a substantive due process right to be free from sexual abuse by teachers). It follows that consensual sexual conduct, even if highly inappropriate, does not shock the conscience. Because a plaintiff must establish that conscience-shocking conduct occurred, the Court concludes that a plaintiff alleging an invasion of her bodily integrity via unwanted sexual contact also bears the burden to prove that she did not consent. Although the Fifth Circuit has no precedent directly on point, the Eighth and Ninth Circuits have reached the same conclusion. *See Lee ex rel. Lee v. Borders*, 764 F.3d 966, 972 (8th Cir. 2014); *Lyons v. Williams*, 91 F.3d 1308, 1311 (9th Cir. 1996). Therefore, the Court holds that Hassan must prove her lack of consent in order to prevail on her Fourteenth Amendment claim.

Hassan's § 1983 municipal liability claims turn on misconduct by the City Defendants that allegedly enabled Greene to violate her constitutional rights: failure to adequately train him, failure to adequately supervise him, and inappropriate retention of him as a police officer. Because these claims are only valid to the extent that the City's policies and its supervisors' decisions were "the 'closely related' cause of" Greene's violation of Hassan's constitutional rights to bodily integrity and protection from unreasonable seizure, *Doe*, 15 F.3d at 453 (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)), the burden of proving her consent should be allocated in the same manner. Hence, the Court holds that for the claim that Defendants'

policies caused Greene to violate Hassan's Fourteenth Amendment rights, Hassan must prove that she did not consent, while for her claim that municipal policies caused Greene to violate her Fourth Amendment rights, Defendants bear this burden.

Finally, Hassan raises a state-law negligent supervision claim against the City. Because sex between a police officer and a criminal complainant at a police station is highly inappropriate, a jury could find that the City negligently supervised Greene even if the sex was consensual. The question of Hassan's consent may, however, affect the extent to which she suffered damages from the encounter. Under Louisiana's duty-risk analysis, a plaintiff must prove "actual damages" in order to prevail on a negligence claim. *See Pinsonneault v. Merchants & Farmers Bank & Tr. Co.*, 2001-2217, p. 6 (La. 4/3/02); 816 So. 2d 270, 276. While a jury finding that Hassan consented to sexual contact with Greene might result in a finding that she was not damaged, Hassan is not required to prove that she did not consent in order establish the elements of her negligence claim. Therefore, the Court holds as to Hassan's negligent supervision claim that neither party is required to demonstrate that she did not consent to sexual contact.

To summarize, on Hassan's intentional tort claims and on her § 1983 claims arising from a violation of her right to bodily integrity, Hassan bears the burden of proving that she did not consent. On her § 1983 claims arising from her right to be free from unreasonable seizure, Defendants must show that she did consent to sexual contact. Neither party must necessarily prove the presence or absence of consent on her negligent supervision claim.

**B.**     **Admissibility of Greene's and Gipson's Awards, Commendations, and Performance Reviews**

Hassan seeks to exclude evidence of Greene's and Gipson's work-related awards and performance reviews based on substantial caselaw holding that officers' commendations, honors, awards, and good deeds should be excluded as character evidence and as evidence whose prejudicial effect substantially outweighs its relevance. [Record Document 63-1 at 6–8]. Defendants respond that they will not use this material to prove Greene's or Gipson's good character but rather to rebut Hassan's negligent hiring, failure-to-train, and failure-to-supervise claims. [Record Document 65 at 2].

### 1.     Awards and Commendations

With a few exceptions not relevant here, evidence of a person's character is inadmissible to prove that she acted in accordance with that character on a particular occasion. Fed. R. Evid. 404(a)(1). In addition, even character evidence admissible for another purpose may be excluded if its probative value is substantially outweighed by a risk of unfair prejudice. Fed. R. Evid. 403. The probative value of evidence such as awards for exemplary conduct is quite low because "evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978).

Evidence establishing that Gipson or Greene were recognized or commended for their work as police officers is character evidence. *See United States v. Brown*, 503 F. Supp. 2d 239, 242 (D.D.C. 2007). If introduced to suggest that Greene and Gipson were unlikely to have committed official misconduct as regards Hassan, their awards and commendations would

violate Rule 404. It is unclear how Greene's or Gipson's awards or commendations would support Defendants' contentions that the City Defendants neither engaged in negligent hiring nor failed to properly supervise Shreveport police officers. Even if awards and commendations are probative because they suggest that the City did not act improperly by failing to discipline or remove Greene before the alleged rape, their probative value is substantially outweighed by the risk that a jury would give them improper weight. *See United States v. Warren*, No. CRIM 10-154, 2010 WL 4668345, at *5 (E.D. La. Nov. 4, 2010) (excluding evidence of a police officer's commendations under the Rule 403 balancing test). Therefore, the Court holds that Greene's and Gipson's awards and commendations are inadmissible.

## 2.    Performance Reviews

Defendants have indicated that they may use Greene's or Gipson's performance reviews to rebut Hassan's claims that the City Defendants had inadequate training and supervision procedures in place. [Record Document 65 at 2]. Because performance reviews are character evidence, the reviews are inadmissible to prove that Greene or Gipson acted in accordance with the reviewers' evaluations on a particular occasion. *See* Fed. R. Evid. 404(a)(1). However, the reviews are admissible to show that the City Defendants had appropriate procedures in place to prevent sexual assault of criminal complainants by police officers. Therefore, the Court holds that Greene's and Gipson's performance reviews are admissible to demonstrate the Department's training and supervision protocols, subject to any other evidentiary exceptions. Because the Court has not viewed the exact documents to which Defendants refer, this holding is made in a general sense only.

## C.    Gipson's Invocation of His Fifth Amendment Privilege

During his deposition, Gipson repeatedly invoked his Fifth Amendment privilege against self-incrimination. [Record Document 53-5]. Because it appears that he may do so at trial, the Court ordered the parties to brief his right to assert the privilege and whether, as a result, the jury may draw an adverse inference against Defendants. [Record Document 75 at 4]. The Court also invited Gipson to submit his views. [Record Document 76]. Plaintiff argues that Gipson only invoked his privilege during his deposition once it became clear that his testimony would reveal that he perjured himself at Greene's criminal trial; she concludes that he should be allowed to invoke the privilege. [Record Document 91 at 7–9]. Greene agrees that Gipson may assert the privilege, but would prefer that he not do so and requests that any adverse inference instruction not apply to Greene. [Record Document 87 at 1–2]. The City Defendants admit that Gipson has a Fifth Amendment right not to testify, but argue that the privilege does not extend to the majority of the questions to which he invoked the privilege at his deposition. [Record Document 90 at 2–3]. Finally, Gipson argues that he is entitled to invoke the privilege because he reasonably fears a perjury prosecution for statements made during Greene's criminal trial. [Record Document 89 at 3–4].

### 1.    Gipson's Right to Invoke the Privilege

Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. As a result, a person may invoke the privilege against self-incrimination in any proceeding when she has a reasonable fear that truthful testimony will result in criminal prosecution. *Kastigar v. United States*, 406 U.S. 441, 444 (1972).

The risk of prosecution may be "remote," but must be more than merely "fanciful." *In re Corrugated Container Antitrust Litig.*, 620 F.2d 1086, 1091 (5th Cir. 1980) (quoting *In re Folding Carton Antitrust Litig.*, 609 F.2d 867, 871 (7th Cir. 1979)). As a result, a reasonable fear of prosecution for perjured statements made in a prior proceeding is sufficient to support an invocation of the Fifth Amendment privilege. *United States v. Whittington*, 783 F.2d 1210, 1218 (5th Cir. 1986) (citing *United States v. Partin*, 552 F.2d 621, 632 (5th Cir. 1977)). However, because the privilege applies to individual statements, a blanket invocation of the privilege is inappropriate. *United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir. 1980). A court must evaluate any invocation on a question-by-question basis by asking: (1) is the answer sought incriminating on its face or in context (e.g., inconsistent with previous sworn testimony); and (2) is the witness's asserted fear of criminal prosecution reasonable under the circumstances? *United States v. Redhead*, 194 F. App'x 234, 236 (5th Cir. 2006) (citing *Hoffman v. United States*, 341 U.S. 479, 486–87 (1951); *Steinbrecher v. Comm'r of Internal Revenue*, 712 F.2d 195, 198 (5th Cir. 1983)).

Gipson admits that his invocation of the Fifth Amendment privilege rests on a fear of prosecution for perjured statements at Greene's criminal trial. [Record Document 89 at 3–4]. If Gipson's previous testimony was false, then inconsistent testimony before this Court could expose him to criminal liability. *See* La. Stat. Ann. § 14:123(A) (Supp. 2018) (authorizing prosecution for false statements under oath); *id.* § 14:124(A) (authorizing prosecution for inconsistent statements under oath). Because the prosecution Gipson fears is for perjury, he may only take the Fifth when his <u>truthful</u> answers in the present proceeding would <u>conflict</u> with his

testimony at the criminal trial. If a _truthful_ answer in the present proceeding would be _consistent_ with his prior testimony, Gipson may not invoke his Fifth Amendment privilege.

The Court holds that Gipson may invoke the privilege but only as to questions whose answers would expose him to a reasonable risk of criminal prosecution. The Court is prepared to employ its contempt power to compel any and all nonincriminating answers. To facilitate the Court's ability to identify those questions as to which Gipson may properly assert his privilege, Plaintiff is ordered to file by **July 2, 2018** complete transcripts of Gipson's testimony at Greene's criminal trial and at his depositions.[1]

### 2. The Evidentiary Effect of Gipson's Invocation of the Privilege

The invocation of the Fifth Amendment privilege "is admissible if it is relevant and not otherwise prohibited by the rules." _FDIC v. Fid. & Deposit Co. of Md._, 45 F.3d 969, 977 (5th Cir. 1995) (citing Fed. R. Evid. 402). When a party testifies at a civil trial, admission of the privilege takes the form of an instruction that the jury may infer that the answer to a question as to which the party has invoked the privilege would be unfavorable to that party. _See Baxter v. Palmigiano_, 425 U.S. 308, 318 (1976). When a nonparty witness at a civil trial invokes the privilege, an adverse inference instruction may also be given, provided there is corroborating evidence of the adverse facts to be inferred and those facts are otherwise admissible. _Fid. & Deposit Co. of Md._, 45 F.3d at 977–78. For instance, the Fifth Circuit has approved an adverse inference instruction

---

[1] The Court notes that excerpts of Gipson's testimony were attached to materials already filed, so it appears the requested transcripts already exist. [Record Documents 53-3, 53-4, 53-5, and 57-4].

against a defendant employer based on a nonparty employee's invocation of the privilege. *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 266 (5th Cir. 2014).

Greene argues that any adverse inference should not apply to him because Gipson and Greene lack a close association. [Record Document 87 at 2]. When a nonparty invokes the privilege, the Fifth Amendment is implicated to a lesser degree than if a party invokes the privilege. *Fid. & Deposit Co. of Md.*, 45 F.3d at 977 (citing *RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 275 (3d Cir. 1986)). In light of the diminished constitutional concerns raised by a nonparty's refusal to testify, the Fifth Circuit allows an adverse inference instruction even when the "non-party . . . ha[s] no special relationship to the party." *Id.* at 978. As a result, the Court holds that it will, upon request, give an instruction allowing the jury to draw inferences from Gipson's invocation of his Fifth Amendment privilege adversely to all Defendants so long as Hassan produces evidence corroborating the facts to be inferred. With regard to any specific fact that can be inferred from Gipson's invocation of the privilege, the Court will also instruct the jury as to the purposes for which the inference of that fact is admissible. The parties are ordered to include draft language of the adverse inference instruction and any desired limiting instructions in their proposed jury charge.[2]

---

[2]An example may clarify the Court's reasoning and aid the parties as they draft their proposed instructions. Gipson has invoked the privilege in response to the question: "Have you said to anybody that Mr. Green[e] had a reputation for getting fresh with women at the police department?" [Record Document 53-5 at 9]. One inference that can be drawn from this statement is that Gipson did, in fact, make this statement. This fact is admissible provided that it is otherwise relevant (for instance, for purposes of impeachment). However, another inference that can be drawn is that Greene did, in fact, have such a reputation. Greene's reputation is inadmissible character evidence if introduced to prove that Greene acted on this occasion in accordance with his reputation for "getting fresh with women." *See* Fed. R. Evid. 404(a)(1). However, the inference that Greene had a reputation for "getting fresh with women" would be

**D.**     <u>Admissibility of Greene's Acquittal for Abuse of Office</u>

Concerned that precedent in analogous cases might require excluding evidence of Greene's acquittal in state criminal court, the Court instructed the parties to brief this issue. [Record Document 75 at 4]. Plaintiff wishes to introduce the acquittal as a component of her theory that Gipson participated in a cover-up of Greene's sexual misconduct, thereby demonstrating the Department's culture. [Record Document 91 at 9–10]. She also intends to request a jury instruction distinguishing the civil and criminal burdens of proof. [*Id.* at 10]. The City Defendants argue that there is no "independent relevance to allow the admissibility of the acquittal," [Record Document 90 at 4], while Greene argues that the acquittal can be admitted if no party objects, [Record Document 85 at 3].

In general, evidence of an acquittal is inadmissible in a subsequent civil proceeding arising from the same facts because criminal acquittal is evidence only that the state could not establish guilt beyond a reasonable doubt. *United States v. Burch*, 294 F.2d 1, 3 (5th Cir. 1961) (citing *Helvering v. Mitchell*, 303 U.S. 391, 397 (1938)). Accordingly, the Fifth Circuit has held that an acquittal for arson is inadmissible in a subsequent civil trial concerning the application of the arson exclusion in a fire insurance contract. *Munoz v. State Farm Lloyds of Tex.*, 522 F.3d 568, 572–73 (5th Cir. 2008). Hassan attempts to distinguish this precedent by noting that Greene was not acquitted of rape, the conduct of which she accuses him in the instant case. [Record Document 91 at 9].

---

admissible to prove that the City Defendants should have intervened to discipline or retrain Greene prior to the alleged rape. Thus, if Gipson invokes the privilege in response to a similar question at trial, the Court is prepared to provide an instruction that delimits the allowable range of inferences.

It is the responsibility of an affected party to object to the admission of evidence. *See United States v. Estes*, 994 F.2d 147, 149 (5th Cir. 1993) (citing Fed. R. Evid. 103(a)(1)). In the absence of any objection, the Court holds that evidence of Greene's acquittal is admissible. However, because precedent counsels against the admission of such evidence, the Court will exclude it if any party objects outside of the jury's hearing.

F.    **Admissibility of Hassan's Exhibits 26, 30, and 31**

1.    **Admissibility of Exhibit 26**

When Hassan reported the alleged rape, the investigating officer compiled findings in a report that Hassan intends to introduce as Plaintiff's Exhibit 26 (the "Offense Report"). [Record Documents 1 at 7 and 67-1 at 3]. Concerned that the Offense Report might be hearsay, the Court ordered briefing. [Record Document 75 at 7]. Hassan argues that the report is a nonhearsay opposing party statement because it was made by an investigating officer of the Department. [Record Document 91 at 11–12]. She also argues that the report is admissible because it was made by an employee of the City on a matter within the scope of that employment. [*Id.*]. Finally, she argues that the report falls into the hearsay exceptions for regularly conducted activities and public records. [*Id.* at 12–15]. Greene agrees that the report is admissible as a past recollection recorded, as a business record, and as a public record and also notes that it may be used to refresh a witness's recollection. [Record Document 88 at 1]. The City Defendants argue that the report is hearsay and that, even if it falls within the public records exception, it should be excluded as cumulative because the investigating officer will be called to testify. [Record Document 90 at 4].

15

Hearsay is a statement made by an out-of-court declarant offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is inadmissible unless an exception applies. Fed. R. Evid. 802. In a civil case, a public record is an exception to the rule against hearsay when it "sets out . . . factual findings from a legally authorized investigation" and the "opponent does not show that the source of information or other circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(8).

No party appears to dispute that the Offense Report contains factual findings from a legally authorized investigation nor does any party attempt to show a lack of trustworthiness. Therefore, the Court holds that the Offense Report itself falls within the public records exception to the rule against hearsay and that the investigating officer's statements within the report are admissible. However, statements of declarants other than the investigating officer that are contained within the Offense Report are admissible only if they are not hearsay or fall within a hearsay exception. Fed. R. Evid. 805. Because the Court has not yet been provided with the Offense Report, the Court cannot at this time rule on the admissibility of other declarants' statements. Rulings on the admissibility of these statements are deferred until the Court may examine the report. Plaintiff is ordered to file a copy of the Offense Report by **July 2, 2018**.

## 2. Admissibility of Exhibits 30 and 31

Hassan recorded two phone calls between herself and Gipson following the alleged rape that she wishes to introduce as Exhibits 30 and 31 (the "Recordings"). [Record Document 67-1at 3]. After Defendants objected to the Recordings as hearsay, the Court ordered briefing. [Record Document 75 at 7]. Hassan argues that her statements describing the alleged rape to

Gipson are admissible as nonhearsay when offered to rebut an implied charge that she recently fabricated her claim against Greene. [Record Document 91 at 15–16]. With regard to Gipson's statements, she argues that under the coconspirator rule they are not hearsay. [*Id.* at 16]. She also argues that various hearsay exceptions such as excited utterance, then-existing statement of mind, and recorded recollection apply. [*Id.* at 16–17]. Greene cursorily asserts that the Recordings are hearsay unless an exception applies, but that they may be used for impeachment. [Record Document 88 at 1–2]. The City Defendants request that any rulings be deferred until trial as admissibility will depend upon the context in which the recordings are offered. [Record Document 90 at 4–5].

Extrinsic evidence of a prior inconsistent statement is not hearsay when offered to impeach a witness because the evidence is offered to attack the witness's credibility rather than for the truth of the matter asserted. *See United States v. Graham*, 858 F.2d 986, 990 n.5 (5th Cir. 1988) (citing Fed. R. Evid. 801(c)). Therefore, the Court holds that the Recordings are admissible to impeach Hassan or Gipson.

A witness's out-of-court statement that is consistent with her testimony is not hearsay when "offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying." Fed. R. Evid. 801(d)(1)(B). Because Hassan represents that she intends to use the Recordings to establish that she did not fabricate the rape charge, the Court holds that her statements within the recordings are admissible for that purpose provided that a proper foundation is laid at trial.

Gipson's statements present a more complicated question. Hearsay exceptions under Rules 803 and 804 must be evaluated on a statement-by-statement basis. *See, e.g., Stone v. Allstate Ins. Co.*, No. CIVA 2:00-0059, 2000 WL 35609369, at *2 (S.D.W. Va. July 24, 2000). Because the Court has not yet heard the Recordings, the Court cannot determine the applicability of these exceptions. To facilitate the Court's evaluation of whether any of these exceptions apply, Hassan is ordered to provide the Court with transcripts of these recordings by **July 2, 2018**.

Under Rule 801(d)(2)(E), an out-of-court statement by a party's coconspirator may be offered to prove the truth of the matter asserted if the statement was made "during and in furtherance of the conspiracy." However, the statement is insufficient, standing alone, to establish the existence of the conspiracy and the declarant's role in it. *Id.* This Court has already addressed the relevance of evidence tending to establish that a conspiracy existed among Gipson and Defendants. [Record Document 75 at 5]. Because there is no independent cause of action for conspiracy in the present case, evidence of a conspiracy is relevant <u>only</u> to the extent that it demonstrates a culture at the Department that tolerates sexual misconduct. [*Id.*]. Hence, at the pretrial conference the Court ruled that evidence of conspiratorial conduct prior to the alleged rape is admissible for any purpose for which the evidence is relevant, while evidence of conspiratorial conduct after the alleged rape is admissible only to corroborate other allegations. [*Id.*].

The admissibility of Gipson's statements as nonhearsay under Rule 801(d)(2)(E) turns on the preliminary question of whether a conspiracy between Gipson and Defendants existed at the time of the phone calls. Preliminary evidentiary questions must be decided by the Court,

which is not bound by the Federal Rules of Evidence when doing so. Fed. R. Evid. 104(a). As a result, the Court's prior determination that evidence of a conspiracy after the alleged rape is of limited relevance does not prevent the Court from considering additional evidence of the existence of a conspiracy following the alleged rape in order to admit Gipson's statements under Rule 801(d)(2)(E).

However, when justice requires, evidence necessary to answer a preliminary question must be taken outside of the jury's presence. Fed. R. Evid. 104(c)(3). To establish the existence of a post-rape conspiracy involving Gipson, Hassan will have to produce much more evidence than would be admissible under this Court's prior ruling regarding the relevance of post-rape conspiratorial conduct. Because exposing the jury to all of the evidence necessary to establish whether Gipson was acting "during and in furtherance" of a conspiracy may confuse the jury, the Court finds that justice requires this evidence must be taken outside of the jury's presence. As this matter is currently stayed pending interlocutory appeal of Shaw's qualified immunity, the necessary evidentiary hearing will be scheduled at a later time.

## III.  Conclusion

For the reasons given above, Plaintiff's motion in limine [Record Document 63] is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** as to Gipson's and Greene's awards and commendations, but **DENIED** as to their performance reviews, subject to any other evidentiary objections.

**IT IS ORDERED** that:

1) On her battery, assault, false imprisonment, intentional infliction of emotional distress, and Fourteenth Amendment claims, Hassan bears the burden to prove that she did not consent to sexual contact with Greene;

2) On Hassan's Fourth Amendment claims, Defendants bear the burden to prove that she consented to sexual relations with Greene;

3) On her 42 U.S.C. § 1983 claims against the City Defendants, Hassan bears the burden of proof on the issue of her consent on claims whose constitutional basis lies in her Fourteenth Amendment right to bodily integrity, while Defendants must prove her consent on claims arising from her Fourth Amendment right to be free from unreasonable seizure;

4) On Hassan's negligent supervision claim, consent is relevant only as to the extent of her damages;

5) Evidence of Gipson's and Greene's awards and commendations is excluded;

6) Evidence of Gipson's and Greene's performance reviews is admitted subject to any other evidentiary objections;

7) Gipson may invoke his Fifth Amendment privilege on a question-by-question basis;

8) The Court will give an adverse inference instruction and, upon request, a limiting instruction that the inference cannot be made when the fact to be inferred is otherwise inadmissible;

9) Greene's state-court acquittal is admitted, subject to any other evidentiary objections, unless any party objects;

10) The investigator's statements in Plaintiff's Exhibit 26 are admitted as a public record, subject to any other evidentiary objections;

11) Statements by declarants other than the investigating officer in Plaintiff's Exhibit 26 are admitted only if they are not hearsay or fall within a hearsay exception;

12) Hassan's and Gipson's statements within Exhibits 30 and 31 are admitted for impeachment;

13) Hassan's statements within Exhibits 30 and 31 are admitted to rebut an implied charge that she fabricated the alleged rape.

**IT IS FURTHER ORDERED** that Hassan provide the Court with the following by **July 2, 2018**:

1) Transcripts of Gipson's testimony at Greene's criminal trial;

2) Transcripts of Gipson's depositions in this matter;

3) Plaintiff's Exhibit 26;

4) Transcripts of Plaintiff's Exhibits 30 and 31.

**IT IS FURTHER ORDERED** that the parties include the adverse inference instruction and any desired limiting instructions in their proposed jury charges to be filed before trial.

**IT IS FURTHER ORDERED** that an evidentiary hearing on the preliminary question of the existence of a conspiracy between Gipson and Defendants at the time of the telephone calls recorded as Plaintiff's Exhibits 30 and 31 will be scheduled at a later time.

**IT IS FURTHER ORDERED** that the Clerk of Court provide a copy of this ruling to Eric Johnson by mail at 303 Green Street, Minden, LA 71055 and by e-mail at ericgjohnson@suddenlink.com.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this ____ day of _____, 2018.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE